# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **RONALD L. BARNES,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )   **Civil Action No. CV-06-S-189-NE** |
| | ) |
| **SUAREZ CORPORATION** | ) |
| **INDUSTRIES,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Plaintiffs Vistek, Incorporated ("Vistek"), and Ronald Barnes ("Barnes"), the Chief Executive Officer of Vistek, filed this action against the following defendants: (1) Suarez Corporation Industries, an Ohio corporation ("SCI"); (2) Benjamin Suarez ("Suarez"), an individual resident of Ohio, and the President of SCI; (3) MBA Company, a Pennsylvania corporation ("MBA"); and, (4) ComTech Research, LLC, a Missouri corporation ("ComTech"). Plaintiffs assert the following claims: (1) breach of a non-use/non-disclosure agreement; (2) breach of a purchase order contract; (3) trademark infringement; (4) misappropriation and disclosure of trade secrets; (5) "infringement of patents"; (6) unfair competition; (7) misrepresentation; and (8) unfair competition/false advertising.[1]  All claims arise, either directly or

---

[1]*See* doc. no.1 (Complaint). All of plaintiffs' claims against MBA were dismissed on August 28, 2006. *See* order entered on August 28, 2006. Plaintiffs have not yet served ComTech with a

indirectly, from a purchase order agreement entered into between Vistek and SCI. Plaintiffs assert federal jurisdiction based upon both the existence of a federal question, 28 U.S.C. § 1331, and satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332. Defendants Suarez and SCI moved to dismiss plaintiffs' claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or in the alternative, to transfer venue, or to stay the action. That motion is considered in this opinion.

## PART ONE

### *Standards of Review*

**A.**   *Rule 12(b)(6):  Failure to State a Claim Upon Which Relief Can Be Granted*

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, a complaint should not be dismissed for failing to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Even so, pleadings must be "something more than an ingenious academic exercise in the

---

copy of their complaint, a defect which will be addressed by separate order.

conceivable." *Marsh v. Butler County*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en banc*). Although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the Eleventh Circuit has explained that the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (emphasis in original) (citation omitted).

**B.** *Rule 12(b)(2): Lack of Personal Jurisdiction*

In the context of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, when no evidentiary hearing is held,

> the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)) (citations omitted); *see also, e.g.*, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

**C.**     *Rule 12(b)(3):  Improper Venue*

On a motion to dismiss for improper venue, when no evidentiary hearing is held,

> the plaintiff must present only a prima facie showing of venue and personal jurisdiction. . . .  The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavit. . . .  In addition, "[w]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version . . . ."

*DeLong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988) (citations omitted) (bracketed alterations in original).

**PART TWO**

*The Allegations of Plaintiffs' Complaint*[2]

---

[2]As this opinion discusses only plaintiffs' claims against defendants SCI and Suarez, the court will consider only the allegations which pertain to those defendants.

Sometime during the year 2003, Vistek and SCI entered into a contract for Vistek to manufacture, and for SCI to purchase, a specified number of air purifiers (the "purchase order agreement" or the "purchase order contract."). The goods covered by the purchase order agreement included a small air purifier manufactured under the trade name "Prozone," and a larger air purifier manufactured under the trade name "Twister."[3] The "Prozone" name is a trademark registered by Barnes.[4] SCI also agreed to purchase a "large number" of additional air purifiers from Vistek under a "blanket purchase order." Vistek manufactured a sufficient number of air purifiers to satisfy SCI's first order, and it purchased a "large number" of component parts in order to satisfy future orders by SCI. SCI refused to accept delivery of Vistek's last shipment of air purifiers, and it has begun to sell another brand of air purifiers, in competition with Vistek.[5]

Vistek and SCI also entered into a "Non-Use/Non-Disclosure Agreement" on May 15, 2003. Pursuant to this agreement, Vistek provided confidential and proprietary information regarding the design, materials, testing, and other aspects of its air purifiers. SCI agreed that it would not disclose this confidential and proprietary information to others, but Vistek alleges that SCI violated that agreement

---

[3]Complaint, at ¶ 9.

[4]*Id.* at ¶ 31.

[5]*Id.* at ¶¶ 9-13.

by sharing the information with other manufacturing facilities, and by purchasing products from these other facilities which are substantially similar to the Prozone and the Twister.[6]

As an incentive to induce Vistek to enter into the purchase order agreement, SCI agreed to purchase an insurance policy with a five-million-dollar limit, in order to indemnify Vistek for SCI's advertising risks.  SCI provided Vistek with a certificate of insurance indicating that it had purchased the required amount of "media plus" insurance coverage for the benefit of plaintiff Ronald Barnes.  Vistek and Barnes later discovered that advertising-related risks are specifically excluded from the policy's coverage.  Plaintiffs allege that they relied upon the representations of SCI and Suarez that insurance coverage was in place when they decided to enter into the purchase order agreement with SCI.[7]

Plaintiff Ronald Barnes owns two patents on technology used by Vistek in producing air purifiers: *i.e.,* USD 457,9465, pertaining to an Ozone Generator, and US6,426,053B1, pertaining to a Hybrid Ozone Generator.  Plaintiffs claim that Suarez and SCI shared the technology encompassed by Barnes' patents with another company, which now is manufacturing air filters that are substantially similar to

---

[6]*Id.* at ¶¶ 14-16; *see also id.* at Exhibit A (Non-Use/Non-Disclosure Agreement).

[7]Complaint, at ¶¶ 17-23.

Vistek's, and distributing them to SCI to sell in competition with Vistek.[8]

On November 10, 2005, SCI placed a notice on its website stating that all of the new Prozone air purifiers had been sold. Specifically, the notice stated that "there will not be any more new Prozone units," and "there will be no more Prozone."[9] The notice also stated that the Prozone units had been replaced with units sold by the Edenpure company.[10] Despite this notice, Vistek states that it presently has 1,000 Prozone air purifiers, and 1,900 Twister air purifiers, available for sale. It also has the capacity to manufacture additional units.[11]

Based upon these factual allegations, plaintiffs first assert that Suarez and SCI breached the Non-Use/Non-Disclosure Agreement by using and disclosing Vistek's confidential and proprietary information without permission.[12] They also assert that SCI breached its purchase order agreement with Vistek when it refused to accept delivery of, and make payment for, the Prozone and Twister air purifiers Vistek manufactured pursuant to the agreement.[13] Third, plaintiffs assert that defendants engaged in unlawful trademark infringement when they used the "Prozone" trademark

---

[8] *Id.* at ¶¶ 24-27.

[9] *Id.* at ¶ 30.

[10] *Id.* at ¶ 32.

[11] *Id.* at ¶¶ 33-34.

[12] *Id.* at ¶¶ 35-39.

[13] *Id.* at ¶¶ 40-45.

without the permission of Barnes, the trademark owner, and without indicating that it is a registered trademark.[14]   As their fourth cause of action, plaintiffs assert that defendants misappropriated and disclosed confidential trade secrets, to which defendants had gained access pursuant to the Non-Use/Non-Disclosure Agreement.[15] To support their fifth claim, for patent infringement, plaintiffs assert that defendants have "converted to [their] own use property owned by the plaintiffs, in particular the two patents mentioned earlier, as well as information sought to be protected by a patent pending and other intellectual property," and that defendants have "disclosed and used the confidential, proprietary intellectual property of the plaintiffs . . . ."[16] Sixth, plaintiffs assert that defendants engaged in unfair competition with Vistek when they used Vistek's proprietary information without permission, and made false representations about the availability of additional Prozone products.[17]   To support their seventh claim, for misrepresentation, plaintiffs assert that they relied to their detriment upon defendants' false representation that SCI had in place five million dollars' worth of insurance coverage for advertising risks.[18]   Finally, plaintiffs assert a claim for "unfair competition/false advertising" based upon the allegedly false

---

[14]*Id.* at ¶¶ 46-50.

[15]*Id.* at ¶¶ 51-56.

[16]*Id.* at ¶¶ 57-59.

[17]*Id.* at ¶¶ 60-63.

[18]*Id.* at ¶¶ 64-70.

statement on SCI's website that all Prozone units had been sold and replaced with Edenpure units.[19]

## PART THREE

### *Discussion*

**A.**   *Compulsory counterclaim*

Defendants assert that Counts Two, Three, Seven, and Eight of plaintiffs' complaint — claims for breach of the purchase order agreement, trademark infringement, misrepresentation, and unfair competition/false advertising, respectively — should be dismissed from this case because they should be filed as compulsory counterclaims in a related action pending in the United States District Court for the Central District of California ("the California case").   On March 3, 2005, an individual named Barbara Baerg filed a putative class action suit against SCI and other defendants in California state court.[20]   Ms. Baerg's complaint asserts claims for breach of express warranty under the California Commercial Code, and violations of the California Business and Professions Code, all essentially based upon SCI's false advertising with regard to the Prozone air purifiers manufactured by Vistek and

---

[19]*Id.* at ¶¶ 71-76.

[20]*See* doc. no. 15 (defendants' request for judicial notice), at Exhibit A (Complaint in Case No. BC329661 in the Superior Court of the State of California for the County of Los Angeles). Plaintiffs did not object to defendants' request for judicial notice, and the court concludes it is well-taken.

sold by SCI.[21]  The case subsequently was removed to the United States District Court for the Central District of California.[22]  SCI filed a third-party complaint against Vistek, Barnes, and other corporate third-party defendants in that court.[23]  Suarez and SCI assert in *this* action that plaintiffs' Counts Two, Three, Seven, and Eight should be dismissed because they are compulsory counterclaims to SCI's third-party complaint in the California case.

Federal Rule of Civil Procedure 13(a) provides that

> [a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.  But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Fed. R. Civ. P. 13(a) (emphasis supplied).  The Eleventh Circuit applies the "logical relationship" test to determine whether a counterclaim arises out of the same "transaction or occurrence" as the opposing party's claim.  *See Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.,* 755 F.2d 1453, 1455 (11th Cir. 1985).  Under

---

[21]*See id.*

[22]*See id.,* Exhibit B (Amended Answer and Third Party Complaint, filed in Civil Action No. CV-05-2415-RSWL (JWJx) in the United States District Court for the Central District of California).

[23]*Id.*

that test, "there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Id.* (quoting *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1361 (5th Cir. 1979)).[24] The former Fifth Circuit also has held that

> a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

*Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 714 (5th Cir. 1970).

SCI's third-party claim against Vistek and Barnes in the California case centers around the alleged responsibility of Vistek and Barnes to indemnify SCI for the class action claims asserted against it in that case. SCI alleges that Vistek and Barnes agreed to make SCI the "exclusive worldwide marketer, seller and distributor of the Prozone" air purifier.[25] As part of this agreement, Vistek and Barnes "covenanted"

---

[24]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[25]Doc. no. 15, Exhibit B, at ¶ 19.

that their representations about the proper functioning and safety of the Prozone units were accurate and supported by scientific data.[26]   Vistek and Barnes also allegedly agreed

> that in case any action or proceeding in any court is instituted against [SCI] by reason of [SCI]'s use of Vistek and/or Barnes' representations about the Prozone, including the language of any California-based advertisements, Vistek and Barnes would defend and indemnify [SCI] against any liability, damages, fines, penalties, costs and expenses arising out of such action or proceeding . . . .[27]

After Barbara Baerg filed the class-action suit against SCI, alleging that SCI made false representations in its advertising about the Prozone product, SCI demanded that Vistek and Barnes honor their alleged promise to defend and indemnify SCI for advertising-related claims.[28]   Vistek and Barnes refused SCI's request.[29] SCI thus asserted six third-party claims — for express indemnity, equitable indemnity, implied contractual indemnity/contribution, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief — against Vistek, Barnes, and the other third-party defendants.[30]

SCI first asserts that plaintiffs' claims in this case are "logically related" to

---

[26]*Id.* at ¶ 20.

[27]*Id.* at ¶ 21.

[28]*Id.* at ¶¶ 23-26.

[29]*Id.* at ¶ 27.

[30]*See id.* at ¶¶ 29-66.

SCI's cross-claim in the California case, because plaintiffs' complaint repeatedly refers to the California case.  Plaintiffs' mere reference to the California case, however, does not establish that it arises out of the same "transaction or occurrence" or the "same operative facts" as the present case.

Defendants also assert that plaintiffs' second cause of action, for breach of the purchase order agreement, is logically related to the cross-claim in the California case because the two cases "concern[] the exact same supply contract . . . ."[31]  It is true that both Count Two in this case, and the third-party complaint in the California case, mention the purchase order agreement between Vistek and SCI.  Even so, the court concludes the two claims are not based upon the same core of operative facts.  In this case, Vistek and Barnes allege that SCI and Suarez breached the purchase order agreement by refusing to accept delivery of, and make payment for, the products Vistek manufactured.  In the California case, SCI alleges that Vistek and Barnes breached the purchase order agreement by refusing to indemnify SCI for claims related to SCI's advertising of Vistek's products.  Although the claims undoubtedly will share *some* common facts, litigation of the claims in different fora would not require a "substantial duplication of effort and time by the parties and the courts," and would not likely lead to inconsistent results.  *Revere,* 426 F.2d at 714.  *See also*

---

[31]Doc. no. 12 (motion to dismiss), at 15.

*United States v. Amtreco, Inc.,* 790 F. Supp. 1576, 1580-81 (M.D. Ga. 1992) (holding that, despite some factual similarities between two claims, the second claim was not a compulsory counterclaim to the first, when the facts of the second claim extended "well beyond" the facts of the first).

Similarly, the court disagrees with defendants' assertion that plaintiffs' claims for trademark infringement and unfair competition/false advertising are logically related to the third-party claim in the California case because they all "concern SCI's Prozone-related advertisements."[32]  To the contrary, substantial factual differences exist among the claims.  The third-party claim in the California case concerns Vistek and Barnes' alleged obligations to indemnify SCI for legal claims related to SCI's advertising of the Prozone product in California.  Plaintiffs' trademark infringement claim in this case, on the other hand, asserts that SCI and Suarez have used the Prozone trademark without the permission of Barnes, the trademark owner, and without indicating that it is a protected trademark.  Plaintiffs' claim for unfair competition/false advertising asserts that SCI and Suarez falsely stated on SCI's website that the Prozone units would no longer be sold, and would be replaced by a different product.  Because plaintiffs' trademark infringement and unfair competition/false advertising claims do not rest upon the same core of operative facts

---

[32]*Id.* at 16.

as SCI's third-party claim in the California case, they will not be considered compulsory counterclaims in that case.

Plaintiffs' claim for misrepresentation, however, mandates a different conclusion. To support that claim, plaintiffs assert that Suarez falsely represented to Barnes and other Vistek employees that SCI would purchase insurance to cover Vistek and Barnes for any liability arising from SCI's advertising of the Prozone product and, later, that such insurance coverage actually was in place. Vistek and Barnes allegedly learned of the falsity of this representation after SCI filed its third-party claim against them in the California case. Vistek received notice of the California case, and presented a claim to the insurance carrier with whom Suarez reportedly had obtained coverage, but the claim was denied, based upon an endorsement to the policy excluding intellectual property and advertising claims.[33] The court agrees with defendants' assertion that these allegations are "simply the reverse of SCI's indemnification demand in the California Action . . . ."[34] In essence, Vistek and Barnes claim that Suarez and SCI should bear responsibility for any judgment entered against them in the California case. Suarez and SCI, on the other hand, claim that Vistek and Barnes should bear that responsibility. If Vistek and

---

[33]Complaint, at ¶¶ 64-70.

[34]Doc. no. 12, at 15.

Barnes succeed on their claim in this case that Suarez misrepresented the existence and extent of SCI's insurance coverage, SCI's indemnification claims against Vistek and Barnes in the California case likely would be affected. Thus, the court concludes that the misrepresentation claim asserted by plaintiffs in this action arises out of the same transaction or occurrence as the third-party claim in the California case. The misrepresentation claim will be dismissed, and plaintiffs will be allowed the opportunity to assert it as a compulsory counterclaim in the California case. *See, e.g., Adam v. Jacobs,* 950 F.2d 89, 93-94 (2d Cir. 1991).

**B.** *Forum Selection Clause*

The Non-Use/Non-Disclosure Agreement between Vistek and SCI contains the following clause: "This Agreement shall be governed by Alabama law and any suit brought by either [SCI] or Vistek for the performance of any terms contained in this Agreement must be brought in *the courts of the State of Alabama*."[35]   Defendants contend this clause mandates the dismissal of plaintiffs' claims for breach of the agreement, misappropriation and disclosure of trade secrets, "infringement of patents," and unfair competition.[36]   Neither party disputes the enforceability of the forum selection clause. Rather, the only dispute is whether the language of the clause

---

[35]*See* Complaint, Exhibit A (Non-Disclosure/Non-Use Agreement), at ¶ 9 (emphasis supplied).

[36]Counts One, Four, Five, and Six, respectively.

-16-

actually requires the questioned claims to be litigated in an alternate forum.

Defendants argue that the provision requiring all claims to be brought in "the courts *of* the State of Alabama" limits venue to courts within the Alabama state system, and excludes a *federal* court sitting in Alabama.  Most courts construing similar provisions have agreed with defendants' position.  For example, in *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.,* 428 F.3d 921 (10th Cir. 2005), the Tenth Circuit considered a forum selection clause which stated:  "Both [parties] submit to the jurisdiction of the Courts *of the State of Colorado* and agree that the Courts *of the State of Colorado*/Arbitrator shall be the exclusive forum for the resolution of any disputes related to or arising out of this Term Agreement."  *Id.* at 924 (emphasis supplied).  The court framed the issue as one of "sovereignty versus geography."  *Id.* at 925.  "If the contract language refers to the state courts to the exclusion of the federal courts, it is a term of sovereignty.  If, on the other hand, it encompasses Colorado state courts and the federal court sitting in the State of Colorado, it is a term of geography."  *Id.* (citing *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.,* 739 F.2d 4, 6 (1st Cir. 1984); *City of New York v. Pullman, Inc.,* 477 F. Supp. 438, 442 (S.D. N.Y. 1979)).  The Tenth Circuit also relied upon the following definition of the term "of" in *Black's Law Dictionary*:

> "Of" is defined as a term "denoting that from which anything

> proceeds; indicating origin, source, descent, and the like . . . .
> Associated with or connected with, usually in some causal relation,
> efficient, material, formal, or final.  The word has been held equivalent
> to after; at, or belonging to; in possession of; manufactured by; residing
> at; from."

*American Soda,* 428 F.3d at 926 n.1 (quoting *Black's Law Dictionary* 1080 (6th ed.

1991)).  Based on this analysis, the court concluded that

> the federal court located in Colorado is not a court *of* the *State* of
> Colorado but rather a court *of* the *United States of America.*  In other
> words, the contract language at issue refers to sovereignty rather than
> geography.  Although located in the various states, the U.S. district
> courts "indisputably proceed from, and find their origin in, the federal
> government," *Dixon*[ *v. TSE International, Inc.,*] 330 F.3d [396,] 398[
> (5th Cir. 2003)], not in the governments of the states in which they are
> located.

*American Soda,* 428 F.3d at 926 (emphasis in original) (footnote omitted).  The court

therefore concluded "that the forum selection clause in the parties' agreement

designates the Colorado state court system as the forum for resolution of disputes

arising out of the contract, and does not include the federal district court."  *Id.*

(footnote omitted).  *See also Dixon,* 330 F.3d at 397-98 (holding that a forum

selection clause referring to "the Courts of Texas" did not include federal district

courts siting within Texas); *LFC Lessors,* 739 F.2d at 6-7 (construing the phrase "the

courts[] of the Commonwealth of Massachusetts" to include only the Massachusetts

state courts).

-18-

The lone case cited by plaintiffs, *Reynolds Publishers, Inc. v. Graphics Financial Group, Ltd.,* 938 F. Supp. 256 (D. N.J. 1996), does not persuade the court to depart from the reasoning of the above authority.  In *Reynolds,* the district court considered a forum selection clause that stated that the underlying agreement "shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the law, and in the courts, *of the Commonwealth of Massachusetts*." *Id.* at 262 (emphasis supplied).  Relying primarily upon the Third Circuit's decision in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 (3d Cir. 1995), the *Reynolds* court found that the forum selection clause encompassed both state and federal courts within Massachusetts.  *Reynolds,* 938 F. Supp. at 262 (citing *Jumara,* 55 F.3d at 875, 881).  In *Jumara,* however, the Third Circuit had considered a forum selection clause calling for venue in "a court of record *in* the county."  *Jumara,* 55 F.3d at 881 (emphasis supplied).  The *Reynolds* court overlooked the critical distinction between the meaning of the terms "of" and "in."  Thus, this court concludes the *Reynolds* decision was not well-reasoned, and will not follow it.[37]

In summary, the court concludes that the forum selection clause in the parties'

---

[37]Even assuming plaintiffs' interpretation of the clause to encompass both state and federal courts is reasonable, the phrase "the courts of the State of Alabama" would be considered ambiguous.  As such, it would be construed against plaintiffs, its drafters, to encompass only the state courts in the Alabama system.  *See Global Satellite Communication Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1274 (11th Cir. 2004).

Non-Use/Non-Disclosure Agreement should be enforced.  The court agrees with defendants' assertion that Counts One, Four, and Six — claims for breach of the Non-Use/Non-Disclosure Agreement, misappropriation and disclosure of trade secrets, and unfair competition, respectively — relate to the terms of the Non-Use/Non–Disclosure Agreement.[38]  Indeed, Count One is an explicit claim for breach of the agreement.   Count Four alleges that defendants misappropriated and/or disclosed plaintiffs' confidential trade secrets, *which were disclosed to defendants pursuant to the Non-Use/Non-Disclosure Agreement*.  Further, Count Six alleges that defendants engaged in unfair competition with Vistek by "using the intellectual property of Vistek."[39]  These claims will be dismissed, without prejudice to plaintiffs' right to pursue them in an appropriate Alabama state court.

The analysis is complicated, however, with regard to Count Five, plaintiffs' claim for "infringement of patents."  As plaintiffs point out, the federal courts possess exclusive jurisdiction over patent-related claims.  *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.  *Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases.*")

---

[38]Plaintiffs did not dispute this assertion.  They argued that the forum selection clause does not mandate dismissal of *any* claim, not that the claims enumerated by defendants do not related to the agreement.

[39]Complaint, at Count Six.

(emphasis supplied).   The parties cannot simply contract around this clear Congressional mandate that all patent cases be litigated in federal court.  Thus, it would appear that Count Five, if valid, must be litigated in this court, despite any relationship the claim might bear to the forum selection clause in the Non-Use/Non-Disclosure Agreement.

This court questions, however, whether Count Five actually does assert a valid claim for patent infringement.  To support that claim, plaintiffs allege that "the defendant [presumably SCI] converted to its own use property owned by the plaintiffs, in particular the two patents mentioned earlier, as well as information sought to be protected by a patent pending and other intellectual property."[40]  They also assert that "defendants have disclosed and used the confidential, proprietary intellectual property of the plaintiffs including, but not limited to, tests, plans and studies, the manufacturing processes, customer list [sic] of Vistek, and marketing information setting forth business opportunities for Vistek products."[41]  These allegations more closely resemble a claim for misappropriation or disclosure of trade secrets than a patent infringement claim.

Plaintiffs do assert in the fact section of their complaint that defendants

---

[40]Complaint, at ¶ 58.

[41]*Id.* at ¶ 59.

"violated the confidentiality agreement and non-use agreement by using the patented technology of the plaintiffs and using confidential information provided by the plaintiffs *to have another manufacturer produce a product*, which is presently for sale by Suarez Corporation Industries."[42]   Even so, plaintiffs do not allege that *defendants themselves* have manufactured or sold any products which infringe the claims of their patent.  The court questions how defendants' alleged "conversion" of the information protected by plaintiffs' patent can support a patent infringement claim if defendants never actually used that information to produce a competing product.[43]  Accordingly, plaintiffs will be ordered to show cause why Count Five should not be dismissed for failure to state a claim upon which relief can be granted.

## PART THREE

### *Conclusion*

As the case currently stands, Counts One, Four, and Six — claims for breach of the Non-Use/Non-Disclosure Agreement, misappropriation and disclosure of trade

---

[42]Complaint, at ¶ 26 (emphasis supplied).

[43]Plaintiffs' counsel clearly comprehends the importance of these allegations.  Plaintiffs recently filed a separate lawsuit in this court against SCI, Suarez, MBA Company, and ComTech. *See* Complaint filed in *Vistek, Inc. v. Suarez Corporation Industries,* Civil Action No. CV-06-S-2059-NE.  That lawsuit asserts a single claim, for patent infringement, and contains allegations that defendants manufactured, used, and/or sold items and/or processes which infringed the claims of U.S. Patent 6,893,610, which is owned by Vistek and Barnes.  *See id.*  That plaintiffs failed to include similar allegations *in this suit* reinforces the court's suspicion that Count Five is not really a patent infringement claim after all.

secrets, and unfair competition, respectively — are due to be dismissed, without prejudice to plaintiffs' right to pursue them in an Alabama state court. Count Seven (for misrepresentation) will be dismissed, without prejudice to plaintiffs' right to assert it as a compulsory counterclaim in the California case. Count Five (for patent infringement) *may* be dismissed, *with prejudice*, for failure to state a claim upon which relief can be granted. Thus, it is likely that only Counts Two, Three, and Eight — claims for breach of the purchase order contract, trademark infringement, and unfair competition/false advertising, respectively — will remain in this court. The court is reluctant to allow these three claims to continue separately from Counts One, Four, and Six, which likely will be litigated in the Alabama state court system. Counts One, Two, Three, Four, Six, and Eight share many common facts. Litigating the claims in different courts carries the risk of inconsistent rulings and/or judgments, duplication of the parties' efforts, and waste of judicial resources. To avoid these evils of "piecemeal litigation," the parties will be ordered to show cause why Counts Two, Three, and Eight should not be dismissed, without prejudice to plaintiffs' right to pursue those claims in an Alabama state court, together with Counts One, Four, and Six.[44]

---

[44]The court notes that, unlike with plaintiffs' purported claim for patent infringement, jurisdiction over plaintiffs' Lanham Act claims does not lie exclusively in federal court. *See Aquatherm Industries, Inc. v. Florida Power & Light Co.,* 84 F.3d 1388, 1394 (11th Cir. 1996).

Additionally, the court concludes that it need not yet reach defendants' argument that it lacks

DONE this 19th day of October, 2006.

_____
United States District Judge

---

personal jurisdiction over the individual defendant, Benjamin Suarez, as all claims in this lawsuit may be dismissed.  If plaintiffs assert claims against Suarez in a different forum, that court will be in a better position to determine its ability to exercise personal jurisdiction over him as a defendant. This court will address defendants' personal jurisdiction arguments *if* it concludes, after reviewing the parties' show cause submissions, that it should retain any of the remaining claims.